E. Solé & Co., S. en C., Plaintiff and Appellee, v. Pedro A. Pedrosa et al., Defendants and Appellants.

No. 6574. Argued November 20, 1935.—Decided February 14, 1936.

*Arturo Aponte, R. Rodríguez Alberty,* and *Miguel A. Bustelo* for appellants. *E. H. F. Dottin* for appellee.

Mr. Chief Justice del Toro delivered the opinion of the court.

The complaint by which this action was commenced was filed in July, 1931, in the District Court of San Juan, by the firm of E. Solé & Co., *S. en C.*, against Pedro V. Pedrosa and his surety, Dr. José Ramos. Briefly, it was therein alleged that on March 18, 1930, the plaintiff and the defendants entered into a written contract regarding the consignment of goods, whereby the plaintiff delivered to Pedrosa on March 20 and on May 25, 1931, automobile tires and tubes valued at $1,545.28, of which amount $9.42 was paid by Pedrosa on account, leaving a balance against the defendants amounting to $1,535.86 which the latter accepted as correct.

The defendants in their answer admitted some of the facts alleged in the complaint, denied others, and alleged as new matter in opposition that in July 1931, the plaintiff and the defendant, Pedrosa, by mutual consent, rescinded and canceled the contract of consignment of goods and accordingly Pedrosa delivered to the plaintiff, in settlement of the balance due, the stock of goods in his establishment, all of this without the knowledge or consent of the other defendant Dr. Ramos.

The case went to trial and the court decided it against the defendants who appealed, assigning in their brief two errors which, as they claim, were committed by the court in giving to the agreement sued upon an interpretation favorable to the plaintiff and against the defendant Ramos, and in holding that defendant Ramos was all the time liable by virtue of the guaranty given by him.

Both assignments of error will be considered and decided jointly.

The agreement under consideration was signed on March 18, 1930, and is entitled an agreement regarding the consignment of goods. The plaintiff firm thereby undertook to consign to defendant Pedrosa, in Caguas, tires and tubes

up to the value of $5,000, to be sold by Pedrosa and paid for by the latter to the plaintiff.

Clause 9 of the contract reads as follows:

"It is expressly agreed and stipulated that this contract shall remain in force for a period of three months from the date of its execution, it being understood that at the expiration of the said three months, by mutual consent of both parties and without notice, the same shall be considered as extended for a further period of three months and so on."

The guaranty subscribed by defendant Ramos was worded as follows:

"I, José Ramos, M.D., of age and a resident of Fajardo, P. R., having read and examined the agreement above transcribed, hereby constitute myself as surety, principal debtor, and solidary and joint guarantor of the party of the second part, Pedro V. Pedrosa, in favor of the party of the first part, E. Solé & Co., *S. en C.*, assuming with him and for him the responsibilities of the agreement above mentioned, in accordance with the clauses thereof and up to the sum of five thousand dollars ($5,000) to cover any balance against the party of the second part which may be due at any time to the firm E. Solé & Co., *S. en C.*, waiving the benefit of discussion and binding myself, jointly and severally, to pay to the said firm of E. Solé & Co., *S. en C.*, any balance up to the sum above stated that might be due at any time to such firm, with precisely the same obligations as are assumed by the principal debtor, that is, the party of the second part.

"Likewise, I expressly submit to the jurisdiction of the municipal and district courts of San Juan, waiving hereby the right to be sued in the district of my residence in any action arising upon the foregoing contract."

At the trial Mariano Mascaró, managing partner, testified for the plaintiff. He stated in substance that on May 25, 1931, upon the failure of Pedrosa to pay the balance owed by him, amounting to $1,535.86, he sent Enrique Mora, an employee of the firm, to collect from Ramos, who went a few days afterward to plaintiff's office and said that just then he was unable to pay such a large sum but that he would submit a proposal to settle it by easy payments, which proposal he never submitted. The debt has not been paid. On cross-

examination by the attorney for the defendants, he admitted that the tubes and tires consigned to Pedrosa during the first three months of the agreement had been paid.

Dr. Ramos testified for the defendants, according to the statement of the case, as follows:

"That on March 18, 1930, Mr. Pedrosa called on him in Fajardo with another gentleman to get his guaranty for the purchase of some tires that he intended to buy, which guaranty he gave by subscribing the agreement. That that took place on March 18, 1930. On March 19, my birthday, I went to my father's home in San Lorenzo and told him that I had given a guaranty. That on the same day he went to Caguas and asked Mr. Pedrosa to let him have the agreement he had subscribed and which he had failed to read in Fajardo. That he then read the same and noticed that the amount which he was going to guarantee was in blank, having got hold of the agreement he took it to attorney Rodríguez Alberty for a consultation; that as the result of that interview with the said attorney the witness wrote a letter to E. Solé & Co. dated March 20, 1930. That the instrument shown to him was a carbon copy of the letter referred to, which he wrote to E. Solé & Co. on March 20, 1930. That he enclosed the original of this letter in an envelop which he addressed to E. Solé & Co. at San Juan, P. R.; affixed a two-cent stamp to it, and mailed it in person.

"The following is a literal transcription of said letter:

" 'Fajardo, P. R., March 20, 1930.—Messrs. E. Solé & Co., San Juan, P. R.—Dear Sirs: Having read the agreement, which I signed with you as guarantor of Mr. Pedro V. Pedrosa, and having noticed that the amount of my guaranty on behalf of Mr. Pedrosa is in blank, I am writing to you to advise you that I will only guarantee the agreement for the time of its duration which is only three months, and that I will not guarantee the same for any additional time. Yours sincerely, Dr. José Ramos.'

"This document was offered in evidence and the plaintiff objected to its admission; whereupon the court admitted the same as 'Defendants' Exhibit A' and plaintiff took an exception.

"That subsequent to the writing of the above letter the witness did not hear further in regard to the matter, and that the first time he heard of it was when he was summoned by the marshal. That after being thus summoned, the witness called at the Solé establishment on the following day, by which time he had been summoned

and sued. He went there looking for Pedrosa and did not talk with Solé, nor with any person by the name of Mascaró with whom he has never talked in his life. That the witness does not know them, nor do they know him, nor does he know who they are."

The plaintiff then called the witnesses Enrique Mora and Mariano and Juan Mascaró.

The first-named witness, an employee of the plaintiff, stated that about May or June, 1931, he was sent to Fajardo to inform Ramos as to the condition of Pedrosa's account and to demand payment; that Ramos asked him to tell Mascaró that he would call at his office within a few days; that he called at the office, talked with Mr. Mascaró, and finally said: "Well, Mr. Mascaró, there is no way out of it but to pay."

The testimony of Mariano and Juan Mascaró, managing partners of the plaintiff firm, the former being its auditor, was to the effect of denying the existence of the letter introduced in evidence by defendant Ramos during his testimony and admitted by the court over the objection of the plaintiff.

Defendant Pedrosa was called to the stand by his attorney. He testified that a few days after the agreement was signed, Enrique Mora called on him in Caguas and showed him a letter from Ramos which had been received by the Solé firm, notifying the latter that he would only be responsible for three months, and said to him: "You will have to go to another firm with which to continue the tire business," to which the witness replied: "I will try and see Mr. Ramos because he usually forgets." That subsequent to that he did not see Mr. Ramos, nor did he ever talk with him.

Mariano Mascaró again took the stand and stated: "That at that time he had two salesmen but that Mora did not cover the Caguas district, was not at all connected with the Caguas district; that the same was covered by a man by the name of Gándara who signed the report for April, May, and June, and, he thinks, some others."

In its statement of the case and opinion the trial court said:

"It appears from the evidence that after the first three months of the life of the agreement, the parties continued the trade in harmony and the agreement was thus extended until May 25, 1931, when it came to an end, without the necessity of notice as it was so stipulated by the parties, and the surety, principal debtor, and guarantor became liable under the contract, as stipulated therein up to the sum of $5,000, for any balance due at any time to E. Solé & Co., *S. en C.*, with exactly the same obligations as the principal debtor, that is, the party of the second part."

Referring to the letter introduced in evidence by the defendants, the court had previously said:

"The letter was admitted as being a carbon copy which, it was alleged, had been made together with the original and which, according to his testimony, the witness had mailed in person.

"Mariano and Juan Mascaró, managing partners of the plaintiff firm, denied that the original of such letter had been received by them at any time. The presumption established by subdivision 24 of section 102, that a letter duly directed and mailed was received in the regular course of the mail, is a disputable presumption and may be controverted by other evidence, as happened in the present case, and the court, upon the evidence finds that the letter in question was not received by the plaintiff. Moreover, defendant Dr. Ramos could not, by himself, after having signed the agreement, cancel the ninth clause thereof relative to the extensions, as the theory of his case is a different one, according to the matter of defense set up in the answer, that is, that the contract, was rescinded and canceled in July, 1931, when Pedrosa surrendered the whole stock and goods in his possession in settlement of the claim and to be released from his obligations, all of which was done without his knowledge or consent. One of the conditions of the contract was that the stock should be returned to its owner, the party of the first part, in case of rescission, and there was no evidence to support the alleged matter of defense."

The evidence introduced was, therefore, conflicting. The trial court resolved the conflict in favor of the plaintiff. It did not believe the testimony given by the defendants in their own behalf. As it has not been shown that the court acted

under the influence of passion, prejudice, or bias, or that it has committed a manifest error, its finding must and will stand.

The question, then, reduces itself to the interpretation of the ninth clause of the contract. At the trial the plaintiff admitted that the goods consigned by it to defendant Pedrosa during the first three months of the life of the contract were paid by him. The balance claimed is for goods consigned to him some months afterwards. It has been tacitly admitted that at the expiration of the first three months the express consent of the guarantor for the continuation of the agreement was neither sought nor obtained. The contract continued in operation, with consignments from the plaintiff and payments by Pedrosa, until it terminated with a balance against the debtor the amount of which is not questioned.

The appellants maintain in their brief that—

"Any person of average intelligence who reads this clause will reach the conclusion that the same means that for an extension the CONSENT OF THE PARTIES is required, and that if this consent is secured no notice whatever is necessary. Such was the agreement subscribed by Dr. Ramos as surety and principal debtor 'AND WITH EXACTLY THE SAME OBLIGATIONS AS THE PRINCIPAL DEBTOR, PEDRO V. PEDROSA.' "

In our opinion the appellants are wrong. The consent of the contracting parties, E. Solé & Co., *S. en C.*, and Pedro V. Pedrosa, appears implicitly from the continuation of the business.

This is not a case involving an extension granted to the debtor without the consent of the surety, nor can any application be made herein of the doctrine established in *Brunet, Sáenz & Co. v. Aponte,* 33 P.R.R. 509, as the essential facts in both cases are different.

It is true that section 1726 of the Civil Code, 1930 ed., provides that suretyship shall not be presumed, that it must be express, and that it can not be extended beyond its specified limits; and that it has been established by the jurisprudence that surety contracts must be restrictively construed.

But this does not mean that where the obligation sued on was expressly contracted and the liability of the debtor clearly appears, such obligation should not be acknowledged or enforced because the surety received no benefit therefrom and will suffer the consequences of the misconduct or misfortune of another. Such a conclusion would destroy the contract of surety, since in almost every case the guaranty given would become academic.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.